15 - 0398 JMC

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Rachel S. Corn, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Baltimore Division, Baltimore, Maryland, being duly sworn, depose and state as follows:

1. I have been a Special Agent (SA) with the FBI since May 2006. Since September 2006, I have primarily investigated federal violations concerning child pornography and the sexual exploitation of children. I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations. Specifically, I have received FBI Crimes Against Children training, FBI Innocent Images Online Undercover training, and FBI Peer-to-Peer Network Online Investigation training. I have participated in the execution of numerous search warrants, of which the majority have involved child exploitation and/or child pornography offenses. Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for computers, other electronic media, and other items evidencing violations of federal laws, including various sections of Title 18, United States Code § 2252A involving child exploitation offenses. I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography. In the course of my employment with the FBI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

0400
15 - ~~0040~~ JMC

15 - 0399 JMC

3. This affidavit is made in support of an application for warrants to search the following locations (hereinafter referred to as the "TARGET LOCATIONS"):

Facebook Accounts:

a. The following Facebook accounts and records that are stored at premises owned, maintained, controlled, or operated by: Facebook, a social networking company, headquartered at 1601 Willow Road, Menlo Park, CA 94025:

1. The Facebook account associated with the email address: loonie198221@hotmail.com and/or UID: 100004811223944; and

2. The Facebook account associated with the Vanity Name: will.wagner.5283, email addresses loonie211982@hotmail.com, loonie72182@hotmail.com, loonie1982@hotmail.com, loonie214ever@hotmail.com and/or UID: 100004869312361;

Microsoft Accounts:

b. The following Microsoft accounts and records that are stored at premises owned, maintained, controlled, or operated by: Microsoft Corporation, a business with offices located at 1 Microsoft Way, Redmond, WA 98052:

3. The Microsoft account associated with the email address loonie198221@hotmail.com;

4. The Microsoft account associated with the email address loonie211982@hotmail.com;

5. The Microsoft account associated with the email address loonie72182@hotmail.com;

6. The Microsoft account associated with the email address loonie1982@hotmail.com;

7. The Microsoft account associated with the email address loonie214ever@hotmail.com; and

Cell Phone:

c. The following cell phone seized from William Wagner and stored at the offices of the FBI, Baltimore Field Office, Annapolis RA, 185 Admiral Cochrane Drive, Suite 101, Annapolis, Maryland:

8. Alcatel Cell Phone, s/n: HTJE53AHQNWGJ35, model: OT871AG;

for evidence of violations of Title 18, United States Code, Section 2422(b) (enticement of a minor).

4. The statements in this affidavit are based in part on information provided by investigators of the Harford County Police Department and Special Agents of the FBI, as well as documents and reports prepared by investigators of the Harford County Police Department, and on my experience and background as a Special Agent of the FBI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of and of Title 18, United States Code, Section 2422(b) (enticement of a minor) are located within the TARGET LOCATIONS.

**SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT CHILD PORNOGRAPHY AND HOW USE OF COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION, RECEIPT AND DISTRIBUTION OF CHILD PORNOGRAPHY**

5. Based on my investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize the internet to view and receive images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals, including the following:

a. Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b. Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Individuals who have a sexual interest in children or images of children frequently maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.

e. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. This data is typically in digital format, and often maintained on computers and in online storage, email accounts or other online communication accounts.

f. Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of Peer to Peer networks and other online methods would have gained knowledge of its location through online communication with others of similar interest. Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child pornography images. Individuals who utilize these types of forums are considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

g. Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

6. Based on my investigative experience related to computer and internet related child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned the following:

a. Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies.) The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

b. The development of computers and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers and the internet serve four functions in connection with child pornography. These are production, communication, distribution, and storage.

c. Child pornographers can now transfer photographs from a camera onto a computer-readable format. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.

d. Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

e. The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion. Collectors and distributors of child pornography use online resources to retrieve and store child pornography, including services offered by Internet Portals such as AOL Inc., Yahoo! and Google, Inc., Facebook, Dropbox, Instagram, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services, file exchange services, messaging services, as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Email accounts, online storage accounts, and

other online communication accounts allow users to save significant amounts of data, including email, images, videos, and other files. The data is maintained on the servers of the providers, and is occasionally retained by the providers after the user deletes the data from their account.

f. In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

7. Based on my investigative experience related to computer and internet related child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned the following:

a. When a person "deletes" a file, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

b. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.

c. The storage capacity of computers, hard drives, cellular telephones, and removable digital media has increased dramatically over the last few years. Common and commercially available hard drives are now capable of storing over 1 TB of data. With that amount of storage space, an individual could store thousands of video files and/or hundreds of thousands of image files.

d. Thus, the ability to retrieve residue of an electronic file depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Since storage for all digital devices has increased dramatically over the last several years, it is more likely that the above described information will be recovered during forensic analysis

8. In addition, computer files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed via the Internet. Electronic files

can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.

9. Based on traits shared by collectors, the use of email, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the enticement of a minor will be found in the TARGET LOCATIONS notwithstanding the passage of time.

**FACEBOOK**

10. Facebook is a free social networking website that provides a host of services to its users. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. Facebook users can post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. A particular user's profile page includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links.

11. Facebook has a Photos application, where users can upload images and videos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

12. Facebook users can exchange private messages with one another. These messages, which are similar to email messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

13. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook also has a Marketplace feature, which allows users to post free classified ads, including items for sale, housing, jobs, and the like.

## MICROSOFT ACCOUNT

14. Microsoft Account is a single sign-on service that allows users to log into Microsoft websites, devices, services, and applications, such as Hotmail, Xbox Live, Messenger and OneDrive. OneDrive, formerly known as SkyDrive, is a file hosting service that allows users to upload and sync files to a cloud storage and then access them from a Web browser or their local device. OneDrive is part of a suite of online services offered by Microsoft and allows users to keep the files private, share them with contacts, or make the files public.

## PROBABLE CAUSE

### A. Background

15. In October 2014, I was contacted by Detective Joseph Dugan of the Harford County Sheriff's Office regarding an online investigation into William Ray Wagner. According to the Maryland Sex Offender Registry website, William Ray Wagner, born 07/21/1982, is currently a registered sex offender. Wagner was convicted of Unlawful Contact with a Minor in 2009 in Pennsylvania.

16. In October 2013, while working in an undercover capacity as a 14 year old female ("UC-14"), Detective Dugan began an online conversation with the individual utilizing the

**Facebook Vanity ID: will.wagner.5283 and User Name: Will Wagner** ("The Subject").

Between October 2013 and October 2014, The Subject and Detective Dugan, acting in an undercover capacity, communicated on and off through Facebook. Below is a summary of the communications:

a. January 15, 2014: The Subject asked "How old r u again" and UC-14 responded "I will be 15 in March but i look older".

b. September 22, 2014: The Subject stated that he was homeless. Later in the same conversation, The Subject asked "how old r u now again i forget everything lol" and UC-14 responded "im 14".

c. On September 25, 2014, and September 26, 2014, The Subject communicated with UC-14 using a second Facebook account **(Facebook UID: 100004811223944 and User Name: Will Wagner)** as follows:

| | |
|---|---|
| The Subject: | no im locked out of my account bc i cant remeber any of the passwords i used |
| | * * * |
| The Subject: | Oh I will be able to get back on my other fb later tonight just wanted to let u know |

d. September 26, 2014: The Subject stated "Just wanted to let u know I am back on my real fb lol".

e. October 6, 2014: The Subject stated "u know what i had a idea… i wanna come see u before i go to court this month". Later in the same conversation, The Subject stated "i will probably be in jail and i was going to come see u like a couple of days before i go to court but its cool."

f. October 7, 2014: The Subject stated "just dont have alot of ppl i call my friend and just figured u would want to see me just in case i do go to jail". The subject stated that he knew UC-14 was 14 years old, and that The Subject was born in 1982. The subject also stated "lol wish i could say more but im not putting anything on this com that could get me into trouble".

g. October 8, 2014: The Subject and UC-14 had the following conversation:

| | |
|---|---|
| The Subject: | do u shave? |
| UC-14: | ? imma girl |

| | |
|---|---|
| The Subject: | i know that i mean downtown lol |
| UC-14: | i just jokin yea i do |
| The Subject: | good lol |
| UC-14: | what if i didnt |
| The Subject: | i dont like hair gets in the way of my tongue lol |
| UC-14: | o my |
| The Subject: | yup lol. have u ever had that done? |
| UC-14: | no |

h. October 8, 2014: The Subject stated, "…at library being bored and talking to u…", "…like i said not on here i shouldnt even of said what i did yesterday…", and "um bc i could get into alot of trouble." Later in the same conversation The Subject and UC-14 had the following conversation:

| | |
|---|---|
| The Subject: | …after we eat is there some where we could go to be alone? |
| UC-14: | one of my friends said she went with a guy to a sears changing room |
| The Subject: | to risky is there like a trail or something near there |
| UC-14: | theres the ma and pa trail but it s pretty busy |
| The Subject: | im sure we could find a spot that isnt busy. U sure u r ready for this lol |
| UC-14: | …i dont know… how far did you want to do |
| The Subject: | idk its up to u |
| UC-14: | i don't think i can go all the way |
| The Subject: | well its up to u but y not |

* * *

| | |
|---|---|
| UC-14: | im to small and its gonna hurt |

* * *

| | |
|---|---|
| The Subject: | it only hurts for a min or two then its all pleasure but like i said its up to u babe |
| UC-14 : | will you be mad if i dont |
| The Subject: | no i wont but i would like to atleast try it |

* * *

| | |
|---|---|
| UC-14: | would you wear a condom |
| The Subject: | of course unless u dont want me to |

* * *

| | |
|---|---|
| The Subject: | wait and see ur going to have the best day f ur life i promise… i got u a present already |

i. October 9, 2014: The Subject and UC-14 had the following conversation:

| | |
|---|---|
| The Subject: | im just worried |
| UC-14: | why |
| The Subject: | bc idk what im walking into |
| UC-14: | i dont understand |

j. On October 9, 2014, The Subject also stated the following: "u could be a cop lol", "sorry babe just do u understand what will happen to me if I get caught", "years in jail", and "bc ur underage"

k. Later in the same conversation on October 9, 2014, The Subject and UC-14 had the following conversation:

| | |
|---|---|
| The Subject: | so have u even touched a dick before lol |
| UC-14: | not really |
| The Subject: | have u ever been fingered |
| UC-14: | a little |
| The Subject: | can I come make love to u know please lol |

* * *

The Subject: … I cant wait to slowly kiss down ur whole body and get my first taste of ur sweet pussy mmmm

* * *

The Subject: will u suck my dick for me baby

17. During the communications, a meeting was arranged between The Subject and UC-14 for October 13, 2014, at approximately 8:30 am. On October 13, 2014, members of the Harford County Sheriff's Office established surveillance at the agreed upon meeting location. At approximately 8:43 pm, Wagner arrived at the agreed upon location by bus. Wagner was placed under arrest. A search of Wagner's person revealed two condoms in his right pant's pocket.

18. Wagner was transported to the Harford County Sheriff's Office. Once back at the location, Wagner was advised of his rights per *Miranda*, and Wagner stated that he understood his rights and agreed to be interviewed. During the recorded interview, Wagner acknowledged that he thought he was communicating with a 14 year old female and that he had been communicating with her via Facebook for a year. Wagner acknowledged that he was going to meet the fourteen year old female that morning, and they agreed to have breakfast and walk to a nearby trail. Wagner stated that he would not have taken the fourteen year old female to the trail even though he brought a blanket with him. Wagner stated "I fucked up" regarding his conversation with the fourteen year old female. Wagner stated that thought he would be going to jail when he went to court on October 20, 2014. Wagner is currently homeless and living in a tent. At the end of the interview, Wagner's cell phone, an **Alcatel Cell Phone, s/n: HTJE53AHQNWGJ35, model: OT871AG**, was seized.

**B. Wagner's Criminal History of Sexual Exploitation Related Offenses**

19. According to the Maryland Sex Offender Registry website, Wagner was convicted of Unlawful Contact with a Minor in 2009 in Pennsylvania.

20. According to the Maryland Judiciary Case Search, in March 2013, Wagner was arrested for failure to register in Harford County, Maryland. In April 2013, Wagner was convicted and sentenced to 60 days of imprisonment.

21. According to the Maryland Judiciary Case Search, in April 2014, Wagner was arrested for failure to register in Harford County, Maryland. A plea hearing was scheduled October 20, 2014, and Wagner was sentenced to 18 months imprisonment and 5 years of supervised probation. The hearing scheduled for October 20, 2014, was scheduled at the time The Subject mentioned to UC-14 that he had court this month, paragraph 16.e. above.

**C. Subscriber Information for Online Accounts**

**Facebook Accounts**:

22. An administrative subpoena was served on Facebook requesting subscriber information and IP logs relating to the Facebook account: will.wagner.5283. Facebook provided the following information relating to the account:

| | |
|---|---|
| Name: | Will Wagner |
| Email Address: | **loonie211982@hotmail.com**, **loonie72182@hotmail.com**, **loonie1982@hotmail.com**, and **loonie214ever@hotmail.com** |
| UID: | 100004869312361 |
| Registration Date: | 12/20/2012 00:26:58 UTC |
| Account Active: | True |
| Vanity Name: | will.wagner.5283 |
| Last Login IP Address: | 64.26.82.102 on 10/12/2014 at 17:32:19 UTC |

23. Facebook also provided several login IP addresses associated with the Facebook account: will.wagner.5283 between September 18, 2014, and October 12, 2014. One of the IP addresses provided was 64.26.82.102 for various dates and times between September 20, 2014, and October 12, 2014. A public database query determined that the IP address 64.26.82.102 was managed by Enoch-Pratt Free Library located in Bel Air, Maryland.

24. An administrative subpoena was served on Facebook requesting subscriber information and IP logs relating to the Facebook account UID: 100004811223944. Facebook provided the following information relating to the account:

| | |
|---|---|
| Name: | Will Wagner |
| Email Address: | **loonie198221@hotmail.com** |
| UID: | 100004811223944 |
| Registration Date: | 09/25/2014 01:02:59 UTC |
| Account Active: | True |
| Last Login IP Address: | 2607:fb90:1808:e30d:65b3:fe3a:911c:6d6b on |

25. Facebook also provided several login IP addresses associated with the Facebook account UID: 100004811223944 between September 25, 2014, and September 26, 2014. One of the IP addresses provided was 64.26.82.102. A public database query determined that the IP address 64.26.82.102 was managed by Enoch-Pratt Free Library located in Bel Air, Maryland.

**Microsoft Accounts**:

26. An administrative subpoena was served on Microsoft requesting subscriber information relating to the email account **loonie198221@hotmail.com**. Microsoft provided the following information relating to the account:

| | |
|---|---|
| Name: | will wagner |
| Date Registered: | 09/24/2014 |
| Zip Code: | 21078 |
| Registered from IP: | 64.26.82.102 |

27. Microsoft also provided two login IP addresses associated with the Microsoft account loonie198221@hotmail.com between September 24, 2014, and September 25, 2014. One of the IP addresses provided was 64.26.82.102. A public database query determined that the IP address 64.26.82.102 was managed by Enoch-Pratt Free Library located in Bel Air, Maryland.

28. An administrative subpoena was served on Microsoft requesting subscriber information relating to the email account **loonie211982@hotmail.com**. Microsoft provided the following information relating to the account:

| | |
|---|---|
| Name: | will wagner |
| Date Registered: | 09/24/2014 |
| Zip Code: | 21078 |
| Registered from IP: | 64.26.82.102 |

29. Microsoft also provided one login IP address associated with the Microsoft account loonie211982@hotmail.com on September 24, 2014. The IP address provided was 64.26.82.102. A public database query determined that the IP address 64.26.82.102 was managed by Enoch-Pratt Free Library located in Bel Air, Maryland.

30. An administrative subpoena was served on Microsoft requesting subscriber information relating to the email account **loonie72182@hotmail.com**. Microsoft provided the following information relating to the account:

| | |
|---|---|
| Name: | will wagner |
| Date Registered: | 09/25/2014 |
| Zip Code: | 21078 |
| Registered from IP: | 64.26.82.102 |

31. Microsoft also provided one login IP address associated with the Microsoft account loonie72182@hotmail.com between September 25, 2014, and October 7, 2014. The IP address provided was 64.26.82.102. A public database query determined that the IP address 64.26.82.102 was managed by Enoch-Pratt Free Library located in Bel Air, Maryland.

32. An administrative subpoena was served on Microsoft requesting subscriber information relating to the email account **loonie1982@hotmail.com**. Microsoft provided the following information relating to the account:

| | |
|---|---|
| Name: | will wagner |
| Date Registered: | 05/14/2014 |

| | |
|---|---|
| Zip Code: | 21078 |
| Registered from IP: | 64.26.69.114 |

33. Microsoft also provided two login IP addresses associated with the Microsoft account loonie1982@hotmail.com between May 14, 2014, and October 14, 2014. One of the IP addresses provided was 64.26.69.114. A public database query determined that the IP address 64.26.69.114 was managed by Enoch-Pratt Free Library located in Perryville, Maryland.

34. An administrative subpoena was served on Microsoft requesting subscriber information relating to the email account **loonie214ever@hotmail.com**. Microsoft provided the following information relating to the account:

| | |
|---|---|
| Name: | will wagner |
| Date Registered: | 12/16/2013 |
| Zip Code: | 21001 |
| Registered from IP: | 64.26.82.102 |

35. Microsoft also provided three login IP addresses associated with the Microsoft account loonie214ever@hotmail.com between December 16, 2013, and January 23, 2014. One of the IP addresses provided was 64.26.82.102. A public database query determined that the IP address 64.26.82.102 was managed by Enoch-Pratt Free Library located in Aberdeen, Maryland.

**SUMMARY**

36. Since all of the aforementioned online accounts appear to be accessed, controlled and/or created by Wagner, I respectfully submit there is probable cause that all of the accounts listed (the TARGET LOCATIONS) contain evidence (1) of enticement of a minor, and (2) are relevant to determine the ownership and control of the accounts that are linked to the enticement of a minor.

**CONCLUSION**

37. Based on the foregoing, I respectfully submit that there is probable cause to believe that the aforementioned federal statutes have been violated and that there is probable cause to believe that evidence of these crimes can be found in the TARGET LOCATIONS.

38. WHEREFORE, I respectfully requests that the Court issue a search warrant to search the items listed in Attachment A1, A2 and A3 of this affidavit, to seize any items located pursuant to the search as described in Attachment B1, B2 and B3.

Special Agent Rachel S. Corn
Federal Bureau of Investigation

Sworn and subscribed before me
this 27 day of February, 2015

HONORABLE J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAR 13 2015

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY